IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALLEN GORHAM JACKSON | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| ANDREW M. SAUL,[1] | : | |
| Commissioner of Social Security | : | |
| Administration | : | NO. 18-4374 |

## MEMORANDUM OF DECISION

THOMAS J. RUETER
United States Magistrate Judge                                                     August 27, 2019

        Plaintiff, Allen Gorham Jackson, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").

        Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br.") and defendant filed a Response to Plaintiff's Request for Review ("Def.'s Br."). For the reasons set forth below, plaintiff's Request for Review will be granted.

## I. FACTUAL AND PROCEDURAL HISTORY

        Plaintiff filed an application for DIB on August 8, 2017, alleging disability beginning April 1, 2017. (R. 139-42.) Plaintiff's claim was denied initially and he filed a timely request for a hearing. (R. 83-106.) A hearing was held on April 17, 2018, before Administrative Law Judge ("ALJ") Vivian McAneney. (R. 36-82.) Plaintiff, acting pro se, appeared and testified. Vanessa Ennis, a vocational expert ("VE"), also appeared and testified. In a decision

---

[1]     On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted as the defendant in this case.

dated May 11, 2018, the ALJ found that plaintiff was not disabled under the Act. (R. 16-35.)

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 1, 2017 through his date last insured of December 31, 2017 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: cervical degenerative disc disease (DDD), right ulnar neuropathy, mild right carpal tunnel syndrome (CTS), and Parsonage-Turner syndrome (brachial myotrophy) (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) which involves frequent gross handling and fine motor manipulation with right (dominant) hand; no more than occasional overhead reaching or crawling; and no climbing of ladders/ropes/scaffolds.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as an accounting clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 1, 2017, the alleged onset date, through December 31, 2017, the date last insured (20 C.F.R. 404.1520(f)).

(R. 21-31.)

Plaintiff filed a request for review of the decision of the ALJ that was denied and the ALJ's decision became the final decision of the Commissioner. (R. 1-5, 137-38.) Plaintiff then filed the present claim, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g)), cert. denied, 571 U.S. 1204 (2014); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). This court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden. 20 C.F.R. § 404.1520.[2] This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. See id. The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

### III. BACKGROUND

Plaintiff appeared at the April 17, 2018, administrative hearing without the assistance of counsel. See R. 40-41. Plaintiff was advised by the ALJ of his right to have a representative present at the hearing; plaintiff declined the ALJ's offer to postpone the hearing and elected to proceed without a representative. (R. 41.)[3]

Plaintiff testified that he is married and lives with his wife. (R. 63-64.) He confirmed that he last worked in January 2013. (R. 48.) From 2006 to 2013, plaintiff worked for

---

[2] For purposes of this opinion, the court will refer to the versions of the relevant regulations in effect at the time of the ALJ's decision on May 11, 2018.

[3] The ALJ ensured that plaintiff completed a Waiver of Right to Representation form. See R. 41, 136. Plaintiff also completed a medical authorization form and reviewed the administrative record with the ALJ to determine whether it was complete. (R. 41-47.)

4

the Defense Finance and Accounting Services. (R. 49-50.)[4] Plaintiff was a member of the Army Reserves, but was activated for duty. (R. 50.) Plaintiff stated that while in the Reserves, he was assigned as an instructor to basic training soldiers. (R. 56.) While on active duty in Afghanistan, plaintiff commanded a police academy. Id. Prior to his time in the Army, plaintiff worked as an accounting clerk for National Education Loan Network from approximately 2003 to 2006. (R. 50-51.)

Plaintiff testified that he began experiencing problems with his neck when he returned from active duty in 2012. (R. 53.) Plaintiff noted that his condition had deteriorated since 2012, such that in June 2017, he had a foraminotomy and a hemilaminectomy at four levels in his spine. (R. 54.) After the surgery, plaintiff began physical therapy in August 2017. (R. 55.) Plaintiff estimated that by December 2017, he had attained "physical therapy progress back to a hundred percent of where I was, . . . before my surgery, not from where I was during my service in the Army, and I've been told by a team of doctors that I will never be back to that strength level." Id. Plaintiff explained that his strength is "about a third" of what he experienced when he was a commander on active duty in the Army. (R. 55-56.)[5] Plaintiff's doctors have advised him that he will need a second surgery in the future. (R. 54-55.)[6]

Plaintiff explained that his symptoms have not changed significantly since prior to the surgery. (R. 56.) According to plaintiff, the surgery was intended "to relieve the pressure on

---

[4] Plaintiff testified that he earned an MBA degree after returning from active duty in Afghanistan. (R. 75.)

[5] The surgeon who performed plaintiff's surgery advised that plaintiff had a ten percent chance of success with the surgery, given his five year history with the impairments. (R. 54.)

[6] Plaintiff testified that he has been advised that he will need fusion surgery. (R. 63.)

5

my nerves on the right side from the center of my spine going right down my arm." Id.[7] At the time of the administrative hearing, plaintiff still experienced pain in his neck. When asked to describe the pain, plaintiff stated:

> It's there often. There are times, or days, that it's less than others. It's more of a constant pain. The scale that's often used is on a scale of one to ten, so I usually average a three. There are times that it goes up to a four.
>
> What I thought I knew, what was pain before my surgery, immediately after my surgery I discovered a whole new level of pain, and that's where I am today. I mean, I'm trying to get better, and I'm told physical therapy is the answer for – and it's not just my neck surgery, but my combination of neurological disorders, one of which there is no cure.

(R. 57.)[8] The ALJ surmised that plaintiff has a combination of impairments, including nerve impingement in his neck for which he received surgery and which is further complicated by an underlying neurological condition. (R. 59.) Plaintiff explained that he first experienced the neurological condition in 2011 when he was serving in a remote area of Afghanistan, but that he did not focus on the issue while he was in the field. (R. 60.) Plaintiff confirmed that the atrophy and muscle weakness appear to be distinct from the nerve issues in his neck, and that he has been evaluated by numerous neurologists who have been unable to resolve his issues. Id.

Plaintiff described the neck pain he experiences as "achy," but stated that he also experiences "points of sharp pain where I do need to stop what I'm doing and let that pain subside." (R. 57.) Plaintiff stated that the sharp pain sensations are short-lived. (R. 58.)

---

[7] Plaintiff noted that although the surgery addressed his right-side pain, he also experiences such pain on the left, albeit to a lesser extent. (R. 68-69.)

[8] Plaintiff further explained that he has Parsonage-Turner syndrome. (R. 59.) Plaintiff noted that his pectoral, deltoid, and scapula muscles are affected. Id. One of the symptoms of this syndrome is wasting of muscle tissue. Id. Plaintiff stated that these muscles are not as strong as they once were and that "the nerves to control the muscles are not working smoothly." Id. Plaintiff indicated that he had been referred to PADRECC, a Parkinson's research center. (R. 67.) Plaintiff was advised that he does not have Parkinson's disease, but his doctors have not yet determined what is causing his ailment. Id. He indicated that PADRECC and Temple University School of Medicine were each conducting research on him. Id.

Plaintiff also indicated that the pain radiates down in his arm, but that it fluctuates depending on his activity level. Id. In particular, plaintiff noted that fine motor movements are challenging for him. Id. For example, plaintiff, who is right-handed, described the difficulty he had when tasked with handwriting a ten-page report. (R. 58-59.)[9]

With respect to other physical impairments, plaintiff described pain in his feet, which necessitates that he walk with a cane. (R. 61.) Plaintiff has utilized shoe inserts since 2008; he was prescribed the use of a cane in early 2017. (R. 61-62.) Plaintiff acknowledged that he was able to walk during a vacation in 2016. (R. 71.) He noted that sometime between August 2016 and January 2017, his condition deteriorated. Id.

With respect to his daily activities, plaintiff testified that he shops for groceries, but utilizes a cane and a shopping cart for assistance. (R. 64.) He can do a load of laundry. Id. Plaintiff is able to cook one meal a day, or "every other day." (R. 65.) When asked to estimate his ability to lift, plaintiff noted that he has difficulty lifting a half gallon of milk onto the top shelf of his refrigerator. Id. Plaintiff attends physical therapy three days per week and must balance the number of household activities he performs with the rigors of physical therapy. (R. 64.) Plaintiff indicated that each physical therapy session lasts approximately two hours. Id. Plaintiff estimated that he could stand for thirty minutes before needing to sit due to fatigue. (R. 66.) Plaintiff had difficulty estimating his ability to walk; he noted that he used an elliptical trainer in physical therapy to build his strength. (R. 67.)

With respect to his mental health, plaintiff noted that he has an anxiety disorder. (R. 75.) Plaintiff described his symptoms as heightened awareness of his surroundings, which is attributable to his service in Afghanistan. (R. 75-76.) He acknowledged that he does not have

---

[9] Plaintiff also described difficulty carrying dishes, washing pots, and brushing his teeth. (R. 65.)

7

difficulty getting along with others, but rather, that he takes notice of the entrances and exits of rooms. (R. 76.) He denied difficulty maintaining attention and concentration, noting his ability to earn his MBA after returning from Afghanistan. Id. Instead, plaintiff explained that he has difficulty sleeping from time to time. If he awakens during the night, he feels the need to check his surroundings, which results in daytime fatigue. Id. He does not take any medication for anxiety, and only takes over-the-counter medication for pain. (R. 77.) Plaintiff acknowledged that he intends to seek counseling through the Department of Veterans Affairs ("VA"). Id.

When asked by the ALJ whether he wished to present further information, plaintiff pointed out to the ALJ that he had been evaluated by physicians at the VA who indicated that he "would have trouble working." (R. 72.)

The VE categorized plaintiff's past work as an accounting clerk, as skilled, sedentary work. (R. 73.) The division commander role was skilled work, performed at the heavy exertion level by plaintiff. (R. 73-74.) The ALJ asked the VE to consider a hypothetical individual of the same age, education, and past work as plaintiff, who is limited to light exertion, with "frequent gross handling, and fine manipulation with the hands; no overhead reaching; no climbing of ladders, ropes, or scaffolds, and no crawling." (R. 77-78.) The VE testified that such individual could not return to plaintiff's past work as a division commander, but could return to plaintiff's past work as an accounting clerk. (R. 78.)

The ALJ then posed a second hypothetical question to the VE, asking whether the accounting clerk job could be performed if the hypothetical individual were limited to occasional use of the hands for gross handling and fine manipulation. Id. The VE opined that the hypothetical individual could not perform the accounting clerk job with such bilateral limitations. Id. However, the VE opined that such individual could perform the job of

information clerk, which is unskilled, light work (for which there are approximately 110,000 jobs in the national economy). (R. 78-79.) The VE further noted that the information contained in the Dictionary of Occupational Titles ("DOT") indicates that fingering is frequent for this job and that reaching and handling are also frequent. (R. 79.) The VE noted that the job to which she referred requires "those bilateral duties" on "an occasional basis" which results in an erosion of "at least twenty percent" of the available jobs. Id. The VE further testified that there would be no sedentary jobs available for an individual who is limited to occasional handling and fingering. (R. 80.) In addition, there would be no transferable skills. Id.

The ALJ summarized the VE's testimony for the benefit of plaintiff and afforded plaintiff the opportunity to question the VE, which plaintiff declined. Id. At the conclusion of the hearing, the ALJ closed the administrative record. (R. 81.)

## IV. DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff has severe impairments but which do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23-24.) Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform light work as detailed in her decision. See R. 24. Plaintiff presently contends that substantial evidence does not support the ALJ's decision. (Pl.'s Br. at 5-8.) Specifically, plaintiff avers that the ALJ erred in assessing his subjective symptoms and that the ALJ failed to properly consider the VA's disability rating. Id. Defendant maintains that substantial evidence supports the decision of the ALJ. (Def.'s Br. at 4-14.)

The issues raised by plaintiff pertain to the ALJ's RFC assessment. Pursuant to the Commissioner's regulations, RFC refers to the most a claimant can do despite his limitations.

20 C.F.R. § 404.1545(a). The RFC assessment must be based upon all relevant evidence, including but not limited to, medical records, medical source opinions, and a claimant's description of his own symptoms. See 20 C.F.R. § 404.1545.[10] The final responsibility for determining whether a plaintiff is disabled under the Act is reserved exclusively for the Commissioner. See 20 C.F.R. § 404.1520b (describing how evidence is considered in the disability determination). Plaintiff contends that in assessing his RFC, however, the ALJ failed to properly evaluate plaintiff's symptoms, including plaintiff's subjective complaints of pain, and erred in concluding that plaintiff sufficiently improved following surgery. (Pl.'s Br. at 5-6.)

With regard to symptom evaluation, the regulations state that the Commissioner will consider all of a claimant's symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, including statements or reports from the claimant, and any description from medical sources or nonmedical sources how the symptoms affect the claimant's activities of daily living and ability to work. See 20 C.F.R. § 404.1529(a). The regulations make clear, however, that statements about the claimant's pain or other symptoms alone will not establish a disability. Id. There must be objective medical evidence from an acceptable medical source that

---

[10] With respect to opinion evidence, the court notes that 20 C.F.R. § 404.1520c, rather than 20 C.F.R. § 404.1527, applies because plaintiff's claim was filed after March 27, 2017. The regulations in effect at the time of the ALJ's decision provide that an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion. See 20 C.F.R. § 404.1520c(a)-(c). Rather the ALJ will consider a medical opinion using certain factors, including whether the opinion is supported by objective medical evidence and explanations, and whether the opinion is consistent with the evidence from other medical sources and nonmedical sources. Id. The relevant regulations also make clear that the factors of supportability and consistency are the most important factors the Commissioner considers when determining how persuasiveness of a medical source's opinion. See 20 C.F.R. § 404.1520c(b)(2). Other factors to be considered include: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, and specialization. See 20 C.F.R. § 404.1520c(c)(3)-(5).

shows the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence, would lead to a disability determination. Id. In evaluating the intensity and persistence of symptoms, including pain, the Commissioner will consider all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, and statements about how a claimant's symptoms affect him. Id.

SSR 16-3p also provides guidance about how the Commissioner will evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. See SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).[11] SSR 16-3p directs an ALJ to conduct a two-step process to: (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms, and (2) evaluate the intensity and persistence of the claimant's symptoms such as pain and determine the extent to which an individual's symptoms limit his ability to perform work-related activities. See id. at *3-5.

Third Circuit case law does not dictate that a plaintiff's complaints must be accepted by an ALJ. Rather, an ALJ must consider the statements of a claimant concerning his symptoms, see Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011) (citing SSR 96-7p, 20 C.F.R. § 404.1529(a)),[12] but may disregard subjective complaints when contrary evidence exists in the record. Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993). The

---

[11] SSR 16-3p was originally published on March 16, 2016. See SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). It was republished on October 25, 2017, with a revision detailing how the Commissioner enforces the applicable date and updated citations to reflect the revised regulations that became effective on March 27, 2017. See 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

[12] SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996), was superseded by SSR 16-3p effective March 28, 2016. See 2016 WL 1237954 (S.S.A. Mar. 24, 2016).

11

ALJ must, however, provide his reasons for doing so.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000); Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990) (noting that ALJ may reject claim of disabling pain where he has considered subjective complaints and specified reasons for rejecting claim).

SSR 16-3p further explains that the use of the term "credibility" was eliminated from the ALJ's analysis, as the regulations do not use that term.  2017 WL 5180304, at *1.  In so doing, the Commissioner clarified that subjective symptom evaluation is not an examination of a claimant's character.  Id.  Judge Posner of the Court of Appeals for the Seventh Circuit expounded that "the change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."  See Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

In the case at bar, plaintiff avers that the ALJ's analysis was not congruent with these standards.  That is, plaintiff contends that the ALJ incorrectly determined that his condition sufficiently improved after surgery, and implied that plaintiff was not credible with respect to his claims of movement dysfunction.  See Pl.'s Br. at 5-6.

When formulating plaintiff's RFC, the ALJ addressed the evidence of record pertaining to plaintiff's claims that he is unable to work due to various health issues.  See R. 24-29.  The ALJ analyzed, inter alia, plaintiff's testimony, the treatment records, and the opinion of the State agency medical consultant, Glenda Cardillo, M.D.  Id.  In particular, the ALJ considered a September 6, 2017, progress note authored by plaintiff's neurosurgeon, Han-Chiao Isaac Chen, M.D.  (R. 27, 592.)  According to the ALJ, this progress note reflects that plaintiff

12

"reported his neck spasms had mostly resolved. Additionally, he also indicated that he felt both arms were stronger since he started physical therapy and began working out at the gym. Also of note, his right arm paresthesias were characterized as stable." (R. 27.) The ALJ also pointed out that "[a]t such time, the claimant's specialist Dr. Chen noted that the claimant had recovered well from his surgery and no longer needed to be seen for follow-up care." Id. However, plaintiff avers that, despite Dr. Chen's statement that plaintiff had "recovered well" from surgery, plaintiff continued to experience pain symptoms and his condition did not improve as suggested by the ALJ. At the administrative hearing, plaintiff estimated that by December 2017, he had attained "physical therapy progress back to a hundred percent of where I was, . . . before my surgery, not from where I was during my service in the Army, and I've been told by a team of doctors that I will never be back to that strength level." (R. 55.) Plaintiff explained that his strength is "about a third" of what he experienced when he was a commander on active duty in the Army. (R. 55-56.)

Additionally, plaintiff takes issue with the ALJ's assessment of a February 5, 2018, treatment note from a PADRECC movement disorder consultation. See R. 28. With respect to this report, the ALJ stated:

> His prior diagnosis of Parsonage-Turner Syndrome was noted as were the claimant's reports of atrophy of the right hand intrinsic muscles and a postural tremor of the right greater than left hand. A comprehensive neurologic examination showed 5/5 strength throughout except for 4+ strength in the right deltoid. There was a questionable decrease in the bulk of the right thenar eminence. A sensory examination was intact to light touch, temperature, and vibration. There was no ataxia, no overshoot with finger to nose, no truncal ataxia, and a Romberg sign was negative. Significantly, claimant's gait and posture were within normal limits. <u>Of note, it was observed "spontaneous walking from the waiting room to the exam room is normal speed; when asked to walk down the hall later he takes very slow, deliberate steps" (Id. at 3). Similarly, the claimant had slow movement of the right hand most pronounced "on direct confrontation" and somewhat inconsistent with what was noted on objective examination.</u> While the claimant complained of some numbness in his left leg, a

nerve conduction study was within normal limits (Id. at 6). Given his subjective complaints of intermittent unsteady gait and slow movement, the claimant was referred for an MRI of the brain in February 2018, which was negative for any acute intracranial abnormality (Exhibit 10F/8).

(R. 28) (emphasis added). However, the progress note also set forth a proposed explanation for the discrepancy in plaintiff's actions during the office visit, a functional movement disorder, which the ALJ failed to acknowledge or address. See R. 698-99. That is, the progress note contains the following impression:

> 51 year old veteran with multiple neurologic symptoms which started fairly abruptly following a traumatic event while deployed. On examination, he may have slightly decreased muscle bulk on the [right] and subtle [right] deltoid weakness, which are consistent with known chronic radiculopathies. He has a very subtle [right] postural tremor which is not out of proportion to weakness. Enhanced physiologic tremor, related to anxiety or hyperthyroidism, is also a possibility. <u>With regard to the newer symptom of slowed deliberate movements, the discrepancy between spontaneous movements and confrontational movement is highly suggestive of a functional movement disorder</u>. We discussed this diagnosis with him and he was understanding. He cannot recall any obvious trauma around the time his gait difficulty started but he acknowledges that the delayed effect of prior trauma could contribute.

(R. 698-99) (emphasis added). Plaintiff argues that the "ALJ implies that the inconsistency noted in the February 2018 report between [plaintiff's] spontaneous movement and his confrontational movements makes [plaintiff's] complaints not credible. The ALJ ignores the conclusion of [plaintiff's] doctor that the discrepancy is highly suggestive of a functional movement disorder and not a volitional action." (Pl.'s Br. at 6.) The court agrees.

The court is cognizant of the fact that there is "no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94 F. App'x 130, 133 (3d Cir. 2004) (not precedential), and that "[a]n ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source." <u>Comiskey v. Astrue</u>, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing <u>Johnson v. Comm'r of Soc. Sec.</u>,

14

529 F.3d 198, 202-04 (3d Cir. 2008)). However, an ALJ may not "'pick and choose' among the evidence, selecting only that which supports his ultimate conclusions." Middlemas v. Astrue, 2009 WL 578406, at *9 (W.D. Pa. Mar. 5, 2009) (citing Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000) (an ALJ may not simply rely on "the pieces of the examination reports that supported [his] determination," while excluding other evidence)).

Additionally, case law guides that an ALJ "may not reject pertinent or probative evidence without explanation." Johnson, 529 F.3d at 204. The ALJ must provide not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Id. See also Burnett, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."). In addition, the Third Circuit has stated, "where there is conflicting probative evidence in the record, [there is] a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and [the court] will vacate or remand a case where such an explanation is not provided." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

Here, the ALJ highlighted the inconsistency between plaintiff's spontaneous movement and his confrontational movement as documented by plaintiff's physician in the February 2018 report, see R. 28, but failed to acknowledge the conclusion of plaintiff's doctor that the discrepancy is highly suggestive of a functional movement disorder. The court cannot tell if this significant probative evidence was not credited or simply ignored. As such, the ALJ's

15

suggestion that plaintiff's claimed symptoms are not supported by objective medical evidence is error.[13]

The court is mindful that this court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). This court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. Monsour Med. Ctr., 806 F.2d at 1190-91. See Chandler, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). See also Cortes v. Comm'r of Soc. Sec., 255 F. App'x 646, 653 (3d Cir. 2007) (not precedential) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting S.E.C. v. Chenery Corp., 318 U.S. 80, 87 (1943)); Clinkscales o/b/o T.S. v. Colvin, 232 F. Supp. 3d 725, 735-36 (E.D. Pa. 2017) (same). Because the ALJ failed to conduct a proper evaluation of the evidence of plaintiff's symptoms in the context of the RFC analysis, her analysis is not supported by

---

[13] Additionally, when considering the medical records, the ALJ explicitly discussed an August 3, 2017, physical therapy record, stating, "the claimant denied any pain or stiffness affecting his neck; he also had full range of motion on physical examination (Exhibit 4F/12). The claimant tolerated the session well and was advised he only need to continue with physical therapy for one more visit and then discontinue it altogether if he continued to have no pain symptoms." (R. 27.) The ALJ thus concluded, "[t]hat there are no additional physical therapy records suggests the claimant continued to experience pain-free symptoms." Id. However, plaintiff testified at the administrative hearing that he attended physical therapy three days per week and that each session lasted "about two hours." (R. 64.) Thus, the ALJ's reliance upon an absence of physical therapy records to discount plaintiff's claimed pain symptoms conflicts with plaintiff's testimony that he continued to attend physical therapy, even at the time of the April 2018 administrative hearing. Although he is represented by counsel in the matter presently before the court, plaintiff appeared at the administrative hearing pro se. The court notes that pursuant to the regulations in effect at the time of the ALJ's decision, the ALJ could have sought to develop plaintiff's medical history to resolve the inconsistency in the evidence of record. See 20 C.F.R. § 1512(b) (setting forth the Commissioner's responsibilities in developing the record).

16

substantial evidence. Therefore, the case will be remanded for further proceedings. If the ALJ again determines that plaintiff retains the RFC to perform a limited range of light work, she must provide an adequate basis for that determination.[14]

Upon remand, the Commissioner may well reach the same conclusion; however, in the absence of sufficient indication that the Commissioner considered all of the evidence in the case and applied the correct legal standards, this court cannot satisfy its obligation to determine whether substantial evidence supports the Commissioner's decision. See Terwilliger v. Chater, 945 F. Supp. 836, 844 (E.D. Pa. 1996) (remanding case in the absence of sufficient indication that the Commissioner considered all of the evidence).[15]

---

[14] Plaintiff further avers that the ALJ ignored the Function Report submitted by plaintiff's wife which corroborates his claims that certain body movements and positions cause sudden pain, tremors, and seizures of his arms and legs, and that he needs assistance with fine motor skills. (Pl.'s Br. at 6 (citing R. 203, 207).) The Third Circuit has held that the ALJ must consider and weigh all of the non-medical evidence before him, including lay witness testimony. See Burnett, 220 F.3d at 122. See also Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014) (citing SSR 06-03p) (when evaluating evidence from non-medical sources such as family or friends ALJ should consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence). The regulations also guide that information from nonmedical sources concerning a claimant's pain will be taken into account in the disability determination. See 20 C.F.R. § 404.1529(c)(3). Upon remand, the ALJ will have the opportunity to analyze all of the evidence in the record and to specify the reasons for her decision.

[15] Plaintiff also argues that the "ALJ agreed that [plaintiff] was limited to occasional use of his hands for gross handling and fine manipulation." (Pl.'s Br. at 6.) Plaintiff's argument is misplaced. The ALJ did not make this finding.
In addition, plaintiff contends that the ALJ failed to properly consider the VA determination that plaintiff has an 80% service-connected disability. See Pl.'s Br. at 7-8. Pursuant to the regulations in effect at the time of the ALJ's decision, a decision by any other governmental agency or nongovernmental entity, about whether a claimant is disabled or entitled to any benefits, is based on its rules and is not binding on the Commissioner. See 20 C.F.R. § 404.1520b. The regulations further specify that, for in claims filed on or after March 27, 2017, the Commissioner will not provide any analysis about such a decision made by any other governmental agency or nongovernmental entity about whether the claimant is disabled or entitled to benefits, but will consider all of the supporting evidence underlying the decision received as evidence in the claim for benefits. Id. Decisions of the VA are specifically contemplated by this regulation. See id. (citing 20 C.F.R. § 404.1504).

17

V.   CONCLUSION

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are not supported by substantial evidence. Accordingly, plaintiff's Request for Review will be granted.

An appropriate Order accompanies this opinion.

BY THE COURT:


___/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

---

Given the court's determination <u>supra</u> that the case be remanded for further consideration, however, the court will not address these issues. A remand may produce different results on plaintiff's application, making discussion of these claims moot. See <u>Watson v. Astrue</u>, 2009 WL 678717, at *6 (E.D. Pa. Mar. 13, 2009) (declining to address plaintiff's remaining claims "until the basis for the ALJ's ruling is clarified through remand"); <u>Steininger v. Barnhart</u>, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (concluding that the ALJ's hypothetical was deficient and the vocational expert's answer to it does not constitute substantial evidence for the ALJ's decision and declining to address plaintiff's other arguments for remand, "as the ALJ's findings may be revised in any decision issued following the new hearing"). Upon remand, the ALJ will have an opportunity to consider the record in light of all of the evidence.